IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHNATHAN BRAD PIPKIN

        Plaintiff,

v.                                                                 No. 2:13-CV-00089 LH/CG

CAROLYN W. COLVYN, Acting
Commissioner of the Social Security
Administration,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* with *Plaintiff's Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* ("Motion"), filed on July 1, 2013, (Doc. 18; Doc. 18-1); *Defendant's Response to Plaintiff's Motion to Reverse and Remand Administrative Agency Decision* ("Response"), filed on August 29, 2013, (Doc. 19); and *Plaintiff's Reply in Support of Motion to Reverse or Remand Administrative Agency Decision* ("Reply"), filed on September 30, 2013, (Doc. 23).

On March 31, 2010 Johnathan Brady Pipkin filed an application for disability insurance benefits, and on April 14, 2010 he filed an application for supplemental security income, alleging disability beginning August 1, 2009. (Administrative Record ("AR") at 161–62, 163–70). His application was denied on August 27, 2010, (AR at 19, 61–64), and also upon reconsideration on March 11, 2011, (AR at 19, 73–76). Mr. Pipkin filed his request for a hearing on April 19, 2011, (AR at 19, 77); a hearing occurred on February 21, 2012 before Administrative Law Judge ("ALJ") Ann Farris (AR at 19-30).

Mr. Pipkin and Judith Beard, an impartial vocational expert, testified at the hearing. (AR at 19). The ALJ issued her opinion on July 16, 2012, finding that Mr. Pipkin is not disabled under 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR at 22). Mr. Pipkin filed an application for review by the Appeals Council, which was summarily denied, (AR at 1–5), making the decision of ALJ Farris the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Pipkin complains that ALJ Farris committed reversible, legal error by: (1) failing to apply the correct legal standards when she evaluated the medical opinion of Mr. Pipkin's treating physician; (2) failing to discuss probative sections of two medical opinions; and (3) failing to order a consultative examination. (Doc. 18-1 at 1–2).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Administrative Law Judge did not apply the correct legal standard when she discounted the medical opinion of Mr. Pipkin's treating physician, pursuant to 42 U.S.C. § 405(g) (sentence four), the Court recommends that the Motion be **GRANTED** and the case be **REMANDED** for further proceedings.

**I. Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.

*Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any

3

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III. Background

Mr. Pipkin initially applied for disability benefits alleging a debilitating back injury and arthritis. (AR at 191). He claims that those impairments inhibit his ability to stand, walk, move, lift, squat, bend, climb stairs, and complete other tasks, because they induce back pain. (AR at 212–19). The administrative record includes his medical records,

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

earnings records, work history report, disability application, hearing testimony, and non-examining state agency evaluations, which were used by the ALJ to evaluate Mr. Pipkin's disability claim.

A. *The ALJ Decision*

At step one, ALJ Farris determined that Mr. Pipkin had not engaged in substantial gainful activity since his alleged onset date of disability. (AR at 21). At step two, the ALJ concluded Mr. Pipkin is severely impaired with lumbar disease with lumbago (but found Mr. Pipkin's impairments of hypertension and leukoplakia and buccal mucosa of the lower lip to be non-severe). (AR at 22). At step three, the ALJ determined that none of Mr. Pipkin's impairments, solely or in combination, equal one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. (AR at 22). The ALJ proceeded to step four, and made residual functional capacity ("RFC") findings that Mr. Pipkin can perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with some restrictions, but is unable to perform any of his past relevant work. (AR at 28). At step five, ALJ Farris considered the testimony of the vocational expert, found that Mr. Pipkin is capable of performing work that exists in significant numbers in the national economy, and concluded that he is not disabled. (AR at 28–30).

1. *Mr. Pipkin's Testimony*

In making the RFC determination, ALJ Farris considered Mr. Pipkin's testimony at the hearing and the disability function report he completed regarding his symptoms. (AR at 212–219). The ALJ acknowledged that Mr. Pipkin testified that he stopped working because of pain. (AR at 25) (citing AR at 37). The ALJ commented that Mr. Pipkin

5

reported that he first injured his back in a motor-vehicle accident in 2004, and after returning to work, reinjured his back in 2009. (AR at 24) (citing AR at 310, 347, 382). The ALJ acknowledged that Mr. Pipkin claims that the pain caused from his back injuries and arthritis inhibit his ability to stand, walk, move, lift, squat, bend, climb stairs, and complete other tasks. (AR at 24) (citing AR at 212–19). The ALJ noted that Mr. Pipkin testified at the hearing that he does not shop or do laundry, but in the function report stated that he does laundry, vacuums, drives, shops, and is able to care for his personal needs. (AR at 26) (citing AR at 41–42, 213–17). ALJ Farris also commented that Mr. Pipkin testified he is able to lift twenty-five pounds. (AR at 26) (citing AR at 44). She noted that he testified that he can only sit for fifteen minutes at a time without having to change position, but did not report any difficulty with sitting in the function report. (AR at 26) (citing AR at 44, 217). The ALJ noted that Mr. Pipkin had given testimony that he has difficulty bending, and that squatting is easier for him to do. (AR at 26) (citing AR at 45).

    2.    *Objective Medical Evidence Considered by the ALJ*

The ALJ also discussed the objective medical evidence in the record, consisting of treatment notes and reports of various doctors and health care professionals.

The ALJ first discussed Mr. Pipkin's treatment by Allen Hurt, M.D., beginning in December 14, 2009. (AR at 24). She noted that Dr. Hurt wrote that at his first appointment Mr. Pipkin reported low back pain with radiation into his lower extremities, but that Dr. Hurt observed Mr. Pipkin could ambulate normally; and on January 26, 2010 Dr. Hurt noted that Mr. Pipkin complained that his pain medications were not working, but that he did not observe that Mr. Pipkin had any muscle weakness. (AR at 24) (citing AR at 287–88, 292). The ALJ stated that Dr. Hurt referred Mr. Pipkin to a surgeon. (AR at

24) (citing AR at 295). ALJ Farris did not indicate what weight she gave Dr. Hurt's opinion.

The ALJ noted that Mr. Pipkin saw neurosurgeon Albert Telfeian, M.D. on March 23, 2010 and April 5, 2010, and that Dr. Telfeian opined that an MRI of Mr. Pipkin's spine showed disc dessication and small disc protrusions. (AR at 24) (citing AR at 308). ALJ Farris commented that Dr. Telfeian wrote that Mr. Pipkin told him that he had refused back surgery in the past and sometimes experienced numbness in some of his toes; Dr. Telfeian also observed that Mr. Pipkin did not exhibit any weakness during his physical examination and had a straight-leg raising test positive for pain on one side. (AR at 24) (citing AR at 308). Dr. Telfeian ordered x-rays of Mr. Pipkin's spine and an electromyography ("EMG")/nerve conduction study. The ALJ pointed out that the new x-ray showed no instability and was normal, and the EMG showed no evidence of radiculopathy or neuropathy; Dr. Telfeian only recommended pain management and not a surgical option. (AR at 24) (citing AR at 307, 310–12). ALJ Farris did not indicate what weight she gave Dr. Telfeian's opinion.

The ALJ proceeded to discuss the treatment of Mr. Pipkin by Paul Bublis, D.O. She commented that a May 27, 2010 EMG study of Mr. Pipkin that was ordered by Dr. Bublis came back negative, and that Dr. Bublis recommended that Mr. Pipkin see a specialist on June 25, 2010. (AR at 24–25) (citing AR at 342, 346). The ALJ noted that on July 28, 2010 and August 25, 2010 Mr. Pipkin reported to Dr. Bublis that his pain was improving because of his pain medication. (AR at 24–25) (citing AR at 345, 347). The ALJ stated that Mr. Pipkin reported to Dr. Bublis that he was suffering from insomnia as a side effect of his pain medication, but refused to take sleeping pills to counteract the side

effect; and that Mr. Pipkin had rejected Dr. Bublis' recommendation that he receive a discogram (back injection) in favor of trying physical therapy first. (AR at 25) (citing AR at 338–39). The ALJ pointed out that as of July 13, 2011, Mr. Pipkin had not begun physical therapy, but was sleeping better; on September 8, 2011 he reported his medicine was helping with his muscle spasms; and by November 4, 2011 he stated he was feeling better. (AR at 25) (citing AR at 360, 364, 366). However, the ALJ noted, on December 12, 2011 Dr. Bublis wrote that Mr. Pipkin was not able to work yet. (AR at 359).

The ALJ also discussed the "Medical Source Statement: Physical Limitations," completed by Dr. Bublis on February 29, 2012, wherein Dr. Bublis made his own RFC assessment of Mr. Pipkin's physical limitations. (AR at 27) (citing AR at 385–89). The ALJ noted Dr. Bublis found that Mr. Pipkin is limited to standing or walking for a total of less than two hours in an eight-hour workday; requires a job that permits shifting positions at will from sitting, standing, or walking; can never or rarely perform various postural functions such as twisting, stooping, crouching, and climbing; and can rarely lift or carry up to ten pounds. (AR at 387).

ALJ Farris decided that she would give Dr. Bublis' RFC assessment "limited weight." In reaching that conclusion, the ALJ said that she considered the factors pursuant to 20 C.F.R. §§ 404.1527 and 416.927. She acknowledged that Dr. Bublis had treated Mr. Pipkin with sufficient frequency to be informed of his impairments, but that "there is a mix of contradictory information that renders the opinion unreliable." (AR at 27). The ALJ pointed out that Dr. Bublis had limited Mr. Pipkin to standing or walking for less than two hours during an eight-hour workday and performing postural functions rarely or never, but that Dr. Hurt had observed that Mr. Pipkin ambulated normally and

did not require assistive devices. (AR at 27). The ALJ also noted that Dr. Hurt and Dr. Telfeian did not observe Mr. Pipkin to have any muscle weakness, and that his physical therapist did not observe the typical radiating symptoms indicative of spinal disc herniation. (AR at 27). The ALJ pointed out that Dr. Bublis limited Mr. Pipkin to lifting ten pounds rarely, but at the hearing Mr. Pipkin testified he could lift approximately twenty-five pounds. (AR at 27). The ALJ also reasoned that Dr. Bublis' assessment that Mr. Pipkin's concentration and attention have been affected by his symptoms and treatment are not supported by the objective medical evidence in the record. (AR at 27). The ALJ concluded that she would give "limited weight" to Dr. Bublis' RFC assessment, because she agreed with him that Mr. Pipkin requires employment that allows for him to shift positions. (AR at 27).

The ALJ outright rejected Dr. Bublis' medical opinion made on December 30, 2011, to the extent it related to the ultimate finding of disability. (AR at 27). She explained that determination of disability is within the purview of the Commissioner. (AR at 27).

ALJ Farris next discussed Mr. Pipkin's physical therapy treatment which he began on November 10, 2011. (AR at 25) (citing AR at 382–84). She noted that Eric Sasser, P.T., reported that Mr. Pipkin had pain with walking and weightbearing, a limited range of motion of the lumbar spine, but no sensation loss or typical radiating symptoms indicative of ongoing spinal disc herniation. (AR at 25) (citing AR at 382–84). ALJ Farris stated that on November 15, 2011 Mr. Pipkin had decreased muscle spasms but increased soreness, and was able to tolerate a light aerobic exercise program for forty-five minutes without any significant difficulty. (AR at 25) (citing AR at 381). The ALJ noted that on November 21, 2011, Mr. Pipkin reported a slight reduction in pain; and on

November 23, 2011 he reported no change. (AR at 25) (citing AR at 379). The ALJ stated that Mr. Pipkin voluntarily discontinued therapy after four sessions, but that Dr. Bublis had explained in his treatment notes that Mr. Pipkin ceased physical therapy because his wife fell ill. (AR at 25) (citing AR at 377, 385). ALJ Farris did not indicate what weight she gave to the physical therapist's opinion.

The ALJ also noted that two non-examining State agency physicians, Craig Billinghurst, M.D. and Allen Gelinas, M.D., concluded Mr. Pipkin was capable of performing light work activity with occasional postural maneuvers. (AR at 27) (citing AR at 315–22, 353). The ALJ gave these opinions "limited weight" because they did not limit Mr. Pipkin sufficiently. (AR at 27).

### 3. RFC Determination

The ALJ found that Mr. Pipkin is able to perform a limited range of light work. (AR at 23). Specifically, she found that Mr. Pipkin could perform restrictive, light work as follows: (1) changing positions between sitting and standing approximately every hour; (2) never climbing ropes, ladders, and scaffolds; (3) occasionally balancing, stooping, crouching, and climbing ramps and stairs; and (4) avoiding hazards such as dangerous moving machinery and unprotected heights. (AR at 23). She further found that Mr. Pipkin only has the capacity to lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours during an eight-hour workday, sit for six hours during an eight-hour workday, and never kneel or crawl. (AR at 28).

In making the RFC determination, ALJ Farris considered all of Mr. Pipkin's symptoms, the objective medical evidence, and other relevant evidence in the record. (AR at 23). She concluded that there was no objective evidence to support Mr. Pipkin's

subjective complaints of disabling pain. (AR at 25). She was persuaded by the normal findings from Mr. Pipkin's x-rays and EMG/nerve conduction studies, and that Mr. Pipkin does not have observable difficulty with walking, muscle weakness, typical symptoms of disc herniation, or that he does not require an assistive device. (AR at 25). She further reasoned that Mr. Pipkin had admitted certain abilities, such as being able to lift approximately twenty-five pounds and not having any difficult sitting; these statements provided support for her RFC assessment that Mr. Pipkin can lift or carry up to twenty pounds occasionally and ten pounds frequently, and sit for six hours in an eight-hour workday. (AR at 26, 28).

    4.    *Past Relevant Work Analysis and Step Five*

ALJ Farris next determined Mr. Pipkin could not perform his "past relevant work" as an air conditioning technician, maintenance manager, and oilfield worker, because those jobs are classified as medium or heavy work. (AR at 28). She proceeded to step five of the sequential analysis. (AR at 28). The ALJ adopted the testimony of Ms. Beard, the vocational expert, that an individual with Mr. Pipkin's age, education, work experience, and residual functional capacity would be able to perform the jobs of "supervisory maintenance manager/building superintendent," "inspector and hand packager," "mail clerk," and "office helper." (AR at 29). ALJ Farris concluded that since Mr. Pipkin is capable of performing work that exists in significant numbers in the national economy, he is not disabled. (AR at 29–30).

Mr. Pipkin submitted additional evidence to the Appeals Council, consisting of a brief written by his attorney, Justin S. Raines. (AR at 254–84). That evidence was incorporated into the record and considered by the Appeals Council, but did not provide

11

a basis for changing the ALJ's decision. This Court must consider the entire record, including the additional evidence, in conducting the substantial evidence review. *Martinez v. Barnhart*, 444 F.3d 1201, 1208, 164 Fed. Appx. 725 (10th Cir. 2006).

      B.    *Points of Error*

In his Motion, Mr. Pipkin alleges ALJ Farris committed several reversible errors. Pipkin contends that (1) ALJ Farris failed to apply the correct legal standards when she evaluated the medical opinions of Mr. Pipkin's treating physician, Dr. Bublis; (2) ALJ Farris failed to discuss probative sections of the medical opinions of Dr. Bublis and Physical Therapist Eric Sasser; and (3) ALJ Farris failed to order a consultative examination to develop the record regarding Mr. Pipkin's mental health. (Doc. 18-1 at 1–2). The Commissioner responds that ALJ Farris properly evaluated and discounted the opinion of Dr. Bublis when she weighed all of the evidence in the record, and that the ALJ was not required to order a consultative report. (Doc. 19).

**IV. Analysis**

In his first point of error, Mr. Pipkin argues that ALJ Farris did not apply the correct legal standards when she considered the medical opinion of his treating physician, Dr. Bublis. (Doc. 22 at 6). He contends the ALJ did not follow the proper two-step analysis when she afforded Mr. Bublis' medical opinion "limited weight," and that this analytical deficiency was not harmless error. Defendant does not dispute that Dr. Bublis is Mr. Pipkin's treating physician, but maintains the ALJ did not commit legal error because she properly discussed and weighed Dr. Bublis' opinion and that substantial evidence supports the ALJ's decision.

### A. *Treating Physician Rule and Two-Step Analysis*

The Social Security regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.157(d). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (per curiam) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2); Social Security Ruling ("SSR") 96-6p, 1996 SSR LEXIS 3, at *5–6).

The ALJ should accord opinions of treating physicians "controlling weight" when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the "treating physician rule." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); *Langley*, 373 F.3d at 1119. A treating physician's opinion is conclusive, and accorded "controlling weight" because the treating physician has a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." *Doyal*, 331 F.3d at 762 (citing 20 C.F.R. § 416.927(d)(2)). When an ALJ determines that a treating physician's opinion is inconsistent with other medical evidence, the ALJ must "examine the other physicians' reports to see if they outweigh the treating physician's report . . . ." *Hamlin*, 365 F.3d at 1215 (quotation omitted).

If a treating physician's opinion does not meet the "controlling weight" standard—meaning it is not supported by medical evidence or consistent with the record—it may still receive deference. SSR 96-2p, 1996 SSR LEXIS 9 at *9 (1996). The

13

level of deference the treating physician's opinion receives must be determined using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c)–(d) and 416.927 (c)–(d). The ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted).

In sum, the ALJ must apply a sequential two-step inquiry if she wishes to accord a treating physician's opinion less than "controlling weight." First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record. Next, she must determine what deference she will accord the opinion after considering the factors listed above, and state sufficiently specific reasons for that determination. Each step in the inquiry is "analytically distinct." *See Krauser v. Astrue*, 638 F.3d 1324, 1330–31 (10th Cir. 2011). Her determination, like all of her findings, must be supported by substantial evidence.

### B. *The ALJ Applied an Improper Legal Standard*

Mr. Pipkin argues that ALJ Farris' analysis of Dr. Bublis' RFC assessment was procedurally deficient, because she did not engage in the proper two-step analysis when she gave his opinion less than "controlling weight." The ALJ began her analysis of Dr. Bublis' opinion thus:

> I have considered Dr. Bublis' opinion pursuant to the provisions of 20 CFR §§ 404.1527 and 416.927 [the "deference factors"]. . . . [Mr. Pipkin] has been treating with Dr. Bublis since May 2010, with sufficient frequency to inform the physician on [Mr. Pipkin's] impairments. However, there is a mix of contradictory information that renders the opinion unreliable.

(AR at 27). The ALJ then explained that: (1) Dr. Bublis had limited Mr. Pipkin to standing or walking for less than two hours during an eight-hour workday and performing postural functions rarely or never, but that Dr. Hurt had observed that Mr. Pipkin ambulated normally and did not require assistive devices; (2) Dr. Hurt and Dr. Telfeian did not observe Mr. Pipkin to have any muscle weakness, and that his physical therapist did not observe the typical radiating symptoms indicative of spinal disc herniation; (3) Dr. Bublis limited Mr. Pipkin to lifting ten pounds rarely, but at the hearing Mr. Pipkin testified he could lift approximately twenty-five pounds; and (4) Dr. Bublis suggested Mr. Pipkin's concentration and attention have been affected by his symptoms and treatment, but that no objective medical evidence supported that conclusion. (AR at 27). However, the ALJ agreed with Dr. Bublis' finding that Mr. Pipkin requires employment that allows for him to shift positions. (AR at 27). For those reasons, she concluded that she would give "limited weight" to Dr. Bublis' opinion.

Mr. Pipkin argues that the ALJ's determination was analytically deficient because the ALJ conflated the two steps of the inquiry into one finding and did not properly evaluate the conflicting evidence. (Doc. 18-1 at 11, 17). He maintains that reversal and remand is required for an adequate consideration of Dr. Bublis' opinion because his opinion conflicts with the ALJ's RFC findings. (Doc. 18-1 at 11) (citing *Robinson*, 336 F.3d at 1082). Defendant responds that the ALJ properly weighed Dr. Bublis' opinion because she explained the step-two "deference factors," discussed Dr. Bublis' treatment

15

history of Mr. Pipkin, found that "there is a mix of contradictory information that renders [Dr. Bublis'] opinion unreliable, and then discussed those contradictions. (Doc. 19 at 6). Defendant further contends that substantial evidence supports the ALJ's analysis. (Doc. 19 at 6).

In evaluating a treating physician's opinion, the ALJ must apply a two-step analysis; each step is analytically distinct. *See Krauser*, 638 F.3d at 1330. In *Krauser v. Astrue*, the ALJ committed error by completing only the first step of the two-step inquiry. In that case, the ALJ did not give the claimant's treating physician's opinion controlling weight because the opinion did not reference objective medical evidence and was inconsistent with other evidence; the Tenth Circuit remanded the case because the ALJ failed to apply the "deference factors" and determine how much weight should be given to the opinion if not "controlling weight." *See id*, at 1330–31. That court stated that "[a] deficiency as to the conditions for controlling weight raises the question of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id*, at 1331.

The reverse is also true. *See Chrismon v. Astrue*, 2013 U.S. App. LEXIS 17485 (10th Cir. Aug. 21, 2013) (unpublished). The ALJ in *Chrismon v. Astrue* assigned the treating physician's opinion "little weight" because she found the opinion was not supported by objective medical evidence in the record, without first finding whether and why the opinion should not be given "controlling weight." *Id*., at *20. Following the holding in *Krauser*, the Tenth Circuit found that the ALJ had procedurally erred by failing to address the "controlling-weight question at all." *Id*. The ALJ refused to hold that the ALJ's single finding had implicitly served the double purpose of being a finding for both steps of the analysis. *See id*., at *21. The Tenth Circuit explained that it is improper to collapse

the two-step inquiry into a single point because "[e]xplicit findings properly tied to each step of the prescribed analysis facilitate meaningful judicial review." *Id.*

In this case, the ALJ failed to state that she would not give Dr. Bublis' RFC assessment "controlling weight" because it is not supported by medical evidence or not inconsistent with the record under 20 C.F.R. §§ 404.1527(d)(2) and 416.912(d)(2). Instead, the ALJ listed the step-two "deference factors," acknowledged Dr. Bublis was informed of Mr. Pipkin's impairments, and concluded that "there is a mix of contradictory information that renders the opinion unreliable." The ALJ proceeded to point out the evidence she deemed contradictory, stated that no objective medical evidence supports Dr. Bublis' opinion as to Mr. Pipkin's concentration and attention, and agreed with Dr. Bublis that Mr. Pipkin requires employment that allows for shifting positions. Then she determined she would give Dr. Bublis' RFC assessment "limited weight."

Defendant argues that ALJ Farris applied the proper legal standard and evaluated Dr. Bublis' RFC assessment under the two-step analysis. However, the Court finds that the ALJ only made one finding in her analysis of Dr. Bublis' opinion. Because it is impermissible for the ALJ to collapse the two-step inquiry into a single point, the ALJ did not properly evaluate Dr. Bublis' opinion.

This Court could read the ALJ's reference to the absence of objective medical evidence relating to Mr. Pipkin's concentration and attention and the "mix of contradictory information" as implicit findings that Dr. Bublis' RFC assessment was not supported by medical evidence and/or inconsistent with substantial evidence in the record to qualify as "controlling" under 20 C.F.R. §§ 404.1527(d)(2) and 416.912(d)(2). However, as the *Chrismon* opinion explains, that would still leave the second step of the

analysis undone. *See Chrismon*, 2013 U.S. App. LEXIS 17485 at *21. Since ALJ Farris failed to make distinct findings at both steps of the analysis, her analysis was legally inadequate and she did not properly evaluate Dr. Bublis' opinion.

      Mr. Pipkin further argues that the ALJ erred when she examined the evidence she deemed contradictory to Dr. Bublis' RFC assessment. (Doc. 18-1 at 17–20). When an ALJ determines that a treating physician's opinion is inconsistent with other physicians' opinions, as is the case here, the ALJ must "examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin*, 365 F.3d at 1215 (quotation omitted). This is because, generally, the treating physician's opinion is entitled to the most weight, followed by that of the non-treating, examining physician; the State agency non-examining physician is entitled to the least weight of all. *Robinson*, 366 F.3d at 1084. Failure to properly weigh the evidence is reversible, legal error. *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).

      ALJ Farris was silent about the weight she allocated the opinions of Dr. Hurt and Dr. Telfeian. In effect, the ALJ gave greater deference to those opinions, but did not reveal how much deference she had given to them or why. The Court finds that ALJ Farris applied an erroneous legal standard because she examined Dr. Bublis' opinion to see if it outweighed the non-treating physicians' opinions of Dr. Hurt and Dr. Telfeian, and not the other way around. Therefore, ALJ Farris applied another erroneous legal standard in evaluating Dr. Bublis' opinions.

      ALJ Farris did not evaluate Dr. Bublis' opinion using the proper legal standards. Therefore, the ALJ did not adequately consider his opinion when she made her RFC determination. Because the ALJ failed to follow the correct legal standards in considering

the opinion of Mr. Pipkin's treating physician, the Court remands this case for further proceedings.

## V. Conclusion

For the reasons discussed above, the Court finds that, considering all of the evidence in the record, the ALJ did not follow the correct legal standards when she considered Dr. Bublis' opinion. The Court does not decide any other issue raised by Mr. Pipkin on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE RECOMMENDED** that *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* (Doc. 18) be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Proposed Findings and Recommended Disposition.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE